**GOVERNMENT OF THE VIRGIN ISLANDS, DEPARTMENT OF JUSTICE, Appellant**

**v.**

**UNITED INDUSTRIAL WORKERS OF NORTH AMERICA, SEAFARERS INTERNATIONAL UNION, AFL-CIO, and LAWRENCE ACKER, Appellees**

D.C. Civ. App. No. 1992-022

T. Ct. Civ. No. 675/1991

District Court of the Virgin Islands

Div. of St. Croix

December 1, 1997

ALLEN POPPLETON, ESQ., (V.I. Department of Justice), St. Thomas, U.S.V.I., *for Appellant*

ESZART A. WYNTER, ESQ., Frederiksted, St. Croix, U.S.V.I., *for Appellees*

MOORE, *Chief Judge*, CAHN and SMOCK,[1] *Judge*

---

[1] Henry C. Smock is no longer a judge of the Territorial Court, but the remaining two judges constitute a quorum and render the opinion of this Court pursuant to section 23A(b) of the Revised Organic Act of 1954. 48 U.S.C. § 1613a(b) (1994), *reprinted in* V.I. CODE ANN., Organic Acts, at 159-60 (1995 & Supp. 1997) (preceding V.I. CODE ANN. tit. 1).

## OPINION OF THE COURT

The Department of Justice petitioned the Territorial Court for review of an arbitration award under its Collective Bargaining Agreement ["CBA"] with the United Industrial Workers of North America ["UIW"], Seafarers International Union ["SIU"], AFL-CIO ["Union"] reinstating an assistant attorney general. Holding that the "Writ of Review statute," V.I. CODE ANN. tit. 5, §§ 1421-23 (1995 & Supp. 1997), does not apply to the award of a private arbitrator under a collective bargaining agreement, the Territorial Court dismissed the petition for lack of jurisdiction and the Government appealed. While we agree that the Writ of Review statute does not allow review of an arbitrator's award, we hold that the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ["FAA"], applies in the Territorial Court. Accordingly, we vacate the dismissal and remand to the Territorial Court for further proceedings consistent with this opinion.

### I. Factual and Procedural Background

Lawrence Acker ["Acker"] was hired by the Virgin Islands Department of Justice ["Government"] as an Assistant Attorney General sometime between September and November of 1987. The Government alleges that beginning in March or April of 1988, Mr. Acker began taking intermittent and unauthorized leaves of absence. Following one such leave which started on January 16, 1990 and ended on February 12, 1990, Acker's immediate supervisor, Assistant Attorney General Darryl D. Donohue ["Donohue"], informed Acker that he was suspended pending a review of his unauthorized absences by then Attorney General Godfrey de Castro ["de Castro"]. On March 7, 1990, in a meeting with Donohue and Union Shop Steward Michael McLaurin, Acker demanded his paychecks that were being withheld. In a letter dated March 15, 1990, de Castro terminated Acker's employment as of February 12, 1990, listing sixteen reasons for the action.

As a result of this termination, the Union filed a grievance on Acker's behalf. On April 4, 1990, Acker and Paul Gimenez ["Gimenez"], the Attorney General's designee, held a meeting to discuss Acker's grievance, as required by the CBA. Gimenez subsequently informed the Union on April 17, 1990 that the

Attorney General's decision terminating Acker was final. On April 24, 1990, the Union filed a demand for arbitration pursuant to Article X, Section 8 of the CBA. The parties selected Robert A. Ellison ["Arbitrator"] to conduct the arbitration.

The parties submitted the legal issue of arbitrability to the Arbitrator at meetings held on July 25 and 30, 1990. The Government argued that the grievance had been filed out of time because it was not filed within ten working days after it ripened, which the Government argued occurred on February 12, 1990.[2] The Government further argued that although Acker had been physically present at the required April 4th meeting, his conduct at the meeting amounted to a failure to participate and constituted a waiver of his right to arbitration. The Arbitrator found that the time period for filing Acker's grievance began on March 15, 1990, the date of the termination letter, and therefore found the grievance to have been timely filed. He also found that Acker's conduct at the April 4th meeting did not amount to a waiver of his right to arbitration.

At the arbitration hearing, the Union argued that the Government violated Article XII, Section 16, of the CBA because: (1) there was no just cause for termination; (2) the rules established in Article XII, Section 3 of the CBA were not only unreasonable, but also were applied in a discriminatory manner; and (3) pursuant to local law, Attorney General de Castro had no authority to terminate Acker. The Government argued that its actions were legally justified because of Acker's abuse of leave privileges, irresponsible and unprofessional conduct, and use of deceitful reasons to procure leave. The Government further averred that Acker's absences exacerbated working conditions at the Department of Justice in St. Croix. Finally, the Government raised issues concerning Acker's failure to mitigate damages and front pay.

On July 1, 1991, the Arbitrator found, as a matter of law, that although the Attorney General may recommend termination, only the Governor has the power to terminate an assistant attorney

---

[2] The Union filed its grievance on March 29, 1990, and filed an amended grievance on March 21, 1990.

general.[3] Additionally, the Arbitrator determined that Mr. Acker had not abused his leave privileges, noting that "with respect to [Acker's] sick leave activity, there was a medical problem which required sporadic attention. On one occasion, at least, leave was requested for training, and it appears that training was required for continuous membership in the South Carolina bar."[4] With regard to mitigation, the Arbitrator found sufficient evidence that Acker had sought comparable employment. The Arbitrator also found that front pay was a non-issue since Acker had not demanded it.[5] Finally, the Arbitrator found no insubordinate acts by Mr. Acker which constituted just cause for termination.[6] Based upon these findings, Acker was awarded reinstatement with full back pay, less the $ 7,000.00 he earned in 1990 and 1991.

On July 23, 1991, the Government filed for a writ of review, petitioning the Territorial Court to vacate the arbitration award. Count One of the petition alleged bias on the part of the Arbitrator because he had rented office space in the past from counsel for respondents.[7] Count Two of the petition alleged lack of jurisdiction of the Arbitrator over Acker's grievance, which the Government alleged was not arbitrable because Acker had refused to participate in the April 4, 1990 grievance hearing and thus failed to satisfy a

---

[3] *In re Lawrence Acker*, #RA-0017-90, at 7 (July 1, 1991) (Ellison, Arb.) ["Arbitrator's decision"].

[4] *Id.* at 8.

[5] *Id.* at 9.

[6] *Id.* at 9-10.

[7] The Government's Petition for Writ of Review states:

1.16. At the time Attorneys Howard-Martin and Wynter were discussing the possible selection of Mr. Ellison as the Arbitrator, Attorney Howard-Martin did not know, and Attorney Wynter did not tell her, that Mr. Ellison had rented office space from Attorney Wynter in Attorney Wynter's professional building for a period of some eight months and that that landlord-tenant relationship had ended only two or three months earlier.

. . .

1.21. By letter dated February 22, 1991, Petitioner . . . demanded that Arbitrator Ellison recuse himself because of the appearance of bias generated by his non-disclosure of his prior close business relationship with Attorney Wynter.

1.22. Arbitrator Ellison, after a hearing on the matter held on March 9, 1991, refused to recuse himself.

Petition for Writ of Review at 3-4.

prerequisite to arbitration under the CBA. The Union and Acker moved for dismissal of the Government's request for a writ of review on three grounds: (1) the FAA barred any review of the Arbitrator's decision; (2) the Writ of Review statute was inapplicable; and (3) the plain wording of section 1421, reasonably construed, refers to governmental entities only and not to private arbitrators. On January 22, 1992, the Territorial Court entered an order dismissing the petition, holding that the Writ of Review statute does not apply to an arbitrator's decision. (Terr. Ct. Mem. & Order of Jan. 22, 1992, at 2.) This appeal followed.

## II. Jurisdiction and Standard of Review

■ This Court is vested with appellate jurisdiction to review the judgments and orders of the Territorial Court in all civil cases pursuant to 4 V.I.C. § 33. The issue on appeal, being one of law, is subject to plenary review. *See, e.g., Stallworth Timber Co. v. Triad Bldg. Supply*, 37 V.I. 49, 968 F. Supp. 279, 281 (D.C.V.I. 1997); *Government of the Virgin Islands v. Steven*, 36 V.I. 176, 962 F. Supp. 682, 684 (D.C.V.I. 1997).

## III. Issues Presented

■ The issue before us is whether the Territorial Court correctly decided that it lacked jurisdiction to review the Arbitrator's decision. The Government argues that the trial court erred in not following at least three earlier decisions of the Territorial Court holding that 5 V.I.C. § 1421 conferred jurisdiction to review a collective bargaining agreement.[8] The Union and Acker counter that: (1) the Territorial Court is not absolutely bound by the doctrine of stare decisis to follow prior decisions of that court; (2)

---

[8] The Government also argues that the Territorial Court had jurisdiction under 24 V.I.C. § 383, which provides in part that "suits for violation of contracts between a public employer and an exclusive representative, or between labor organizations, may be brought in any court of this Territory having jurisdiction of the parties." (Brief of Appellant at 9.) We hold that the language of section 383 only allows suits between a public employer and union for a violation of a term of a collective bargaining agreement between them, but not to review a decision of a private arbitrator chosen by the parties pursuant to one of the terms of that agreement. We therefore reject the course of action suggested by *Department of Housing and Community Renewal v. United Industrial Service*, 23 V.I. 333 (Terr. Ct. 1988) (court reviewed an arbitrator's award pursuant to 24 V.I.C. § 383).

175

the FAA preempts trial court review of arbitration awards; and (3) the language of the Writ of Review statute permits review of governmental entities and officials, as opposed to private entities.[9]

## A. Writ of Review Statute Does Not Give Jurisdiction to the Territorial Court to Review an Arbitration Award

■ This Court agrees with the Territorial Court that the Writ of Review statute does not apply to the award of a private arbitrator under a collective bargaining agreement. Section 1421 states that

> [a]ny party to any proceeding before or by any officer, board, commission, authority, or tribunal may have the decision or determination thereof reviewed for errors therein as prescribed in this chapter and rules of court. Upon the review, the court may review any intermediate order involving the merits necessarily affecting the decision or determination sought to be reviewed.

5 V.I.C. § 1421 (emphasis added).

Section 1422 provides:

> The writ of review shall be allowed in all cases where there is no appeal or other plain, speedy, and adequate remedy, and where the officer, board, commission, authority, or tribunal in the exercise of his or its functions appears to have exercised such functions erroneously, or to have exceeded his or its jurisdiction, to the injury of some substantial right of the plaintiff.

*Id.* § 1422 (emphasis added). This statutory scheme has been interpreted as a broadly drafted remedial device "enabling parties aggrieved by an administrative or ministerial decision to seek judicial review of that determination." *Equity Inv. Corp. v. Government of Virgin Islands*, 19 V.I. 180, 182 (D.C.V.I. 1982) (emphasis added) (*citing Simmon v. Christian*, 12 V.I. 307, 309 (D.C.V.I. 1975)).

___
[9] As the Government points out, the Union previously asserted in *UIW, SIU, AFL-CIO v. Government*, Civ. No. 245/1991 (Terr. Ct. 1991), that the Territorial Court has jurisdiction over a petition for writ of review of an arbitrator's decision pursuant to 5 V.I.C. § 1422, but now attempts to argue lack of jurisdiction with respect to the same Code section. (Appellee's Mem. Submitted Pursuant to Court Order of Oct. 3, 1991, at 7.)

■ The Government relies heavily on three Territorial Court decisions which hold that the Territorial Court has jurisdiction to review an arbitrator's decision.[10] The Government argues that pursuant to the doctrine of stare decisis the trial court should have followed the rulings in these three cases. Whether or not the trial court should have followed these Territorial Court decisions is irrelevant to our appellate review since the issue has never been decided by this Court.[11] After an independent analysis of the relevant statutory provisions, we hold that the Territorial Court does not have jurisdiction to review a private arbitrator's decision under the Writ of Review statute.

Sections 1421 and 1422 limit the right of judicial review to cases where an "officer, board, commission, authority, or tribunal" has exercised his or its functions erroneously or has exceeded his or its jurisdiction. The Territorial Court focused primarily on the plain meaning of the words "officer, board, commission, authority, or tribunal" in deciding that the Writ of Review statute does not permit review of a private arbitrator's award. We find that each of these five defining words connotes some sort of governmental, administrative, adjudicatory, officially sanctioned entity.[12] This Court therefore agrees with the Territorial Court's determination that the proceedings and orders of a private arbitrator do not come within the scope of the Writ of Review statute. We also find the Writ of Review statute inapplicable on two additional grounds.

■ Section 1423 gives the reviewing court the "power to affirm, modify, reverse, or annul the decision or determination reviewed." These words authorize the general review of decisions of admin-

---

[10] *See Government v. St. Thomas/St. John Educ. Adm'r Ass'n*, 25 V.I. 71 (Terr. Ct. 1990) (holding that with regard to school work schedules, the arbitrator's decision was consistent with local statutory laws applicable to collective bargaining agreements between the Government and public employees, but not addressing sections 1421-23); *Government v. United Indus. Workers*, Civ. No. 52/1990 (Terr. Ct. 1990) (holding that "[s]ection 1422 is broad enough to afford a remedy to an individual who is aggrieved by an arbitrator's award pursuant to [a collective bargaining agreement]"); *Fernando Crispin v. Government*, 23 V.I. 15 (Terr. Ct. 1987) (finding that section 1421 grants the Territorial Court the authority to review an arbitrator's award).

[11] Nor has the United States Court of Appeals for the Third Circuit decided the issue.

[12] This interpretation is supported by the fact that section 1421 is based on the 1921 Codes, which used only the words "officer or tribunal." See Revision Note and 1921 Codes, tit. III, ch. 52, § 2.

istrative agencies, and while they have been interpreted as incorporating the substantial evidence rule of administrative law, *see, e.g., Donastorg v. Government Employees' Serv. Comm'n*, 6 V.I. 368, 371, 285 F. Supp. 111, 112 (D.C.V.I. 1968), the authorized scope of review is expansive. In contrast, the Third Circuit Court of Appeals has stated that the review of an arbitration award is narrowly circumscribed.

> Because the arbitrator's construction of the collective bargaining agreement is bargained for, a court is not free to vacate an award because it views the merits differently. Nor may a court overrule an arbitration decision because it finds an error of law. The strong federal policy favoring private resolution of labor disputes compels this high degree of deference. An arbitrator's award must be enforced so long as it "draws its essence from the collective bargaining agreement."

*Bouton v. Government of the Virgin Islands*, 28 V.I. 211, 223-24, 987 F.2d 162, 170 (3d Cir. 1993) (citations omitted).[13] The narrow scope of review of an arbitration award is incompatible with the broad power "to affirm, modify, reverse, or annul" granted by section 1423, even when restricted by the substantial evidence rule, and leads this Court to conclude that the Writ of Review statute cannot apply to decisions of a private arbitrator.

■ Our construction of the Writ of Review statute is also consistent with the terms of the CBA. The parties in this matter voluntarily and expressly agreed that an arbitrator's award with respect to grievances such as Acker's would be judicially enforceable. CBA, Art. X, § 8. Thus the parties contemplated that the scope of review of such awards would be much narrower than that permitted by section 1423. By invoking section 1423, the Government in essence is attempting to modify the terms of the parties' bargained for agreement. This it cannot do.

---

[13] *Accord St. Thomas/St. John Educ. Admin'rs Ass'n*, 25 V.I. at 75-76; *Rissing v. Department of Pub. Safety*, 20 V.I. 426, 428 (Terr. Ct. 1984); *Virgin Islands Nurses Ass'n Bargaining Unit v. Schneider*, 18 V.I. 259, 261 (D.C.V.I. 1981), *aff'd*, 668 F.2d 221 (3d Cir. 1981).

## B. Federal Arbitration Act Applies in Territorial Court

■ We hold that the Territorial Court has jurisdiction over the Arbitrator's award under both Virgin Islands' law and the FAA. First, the substantive law of the Virgin Islands includes the judicial remedy of "enforcing an arbitration award" as embodied in the RESTATEMENT (SECOND) OF CONTRACTS § 345(f), adopted by the Virgin Islands Code.[14] Second, section 2 of the FAA, providing for the validity, irrevocability, and enforcement of agreements to arbitrate,[15] applies in state courts in addition to federal district courts. *Southland Corp. v. Keating,* 465 U.S. 1, 16, 79 L. Ed. 2d 1, 104 S. Ct. 852 (1984); *see, e.g., Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 130 L. Ed. 2d 753, 115 S. Ct. 834 (1995); *Volt Info. Sciences, Inc. v. Board of Trustees,* 489 U.S. 468, 477 n.6, 103 L. Ed. 2d 488, 109 S. Ct. 1248 (1989) ("[W]e have held that the FAA's 'substantive' provisions — §§ 1 and 2 — are applicable in state as well as federal court . . . ."). Third, the Territorial Court of the Virgin Islands is a 'state' court for purposes of the FAA. *Cf. Harris v. Boreham,* 3 V.I. 565, 572-73, 233 F.2d 110, 113-14 (3d Cir. 1956) (Congress has intended to give the Territory of the Virgin Islands "full power of local self-determination" and has created a territorial government "endowed with attributes of sovereignty" and "'conforming to the American system with defined and divided powers — legislative, executive and judicial.'" (*quoting People of Porto Rico v. Rosaly y Castillo,* 227 U.S. 270, 277, 57 L. Ed. 507, 33 S. Ct. 352 (1913)). Accordingly, section 2 of the FAA applies in the Territorial Court.[16]

---

[14] Virgin Islands law provides that the "rules of the common law, as expressed in the restatements of the law . . . shall be the rules of decision in the courts of the Virgin Islands . . . in the absence of local laws to the contrary." 1 V.I.C. § 4.

[15] Section 2 provides:

A written provision . . . or a contract . . . to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

[16] The contention of appellees Acker and Union that because the FAA applies to this case, Congress has thereby preempted Territorial Court review of arbitration awards is thus answered and rejected. Additionally, there is no issue of statutory preemption here because no provision of the Virgin Islands Code restricts or limits the operation or purpose of the FAA.

179

The net result is that agreements to arbitrate are valid, irrevocable, and enforceable in the Territorial Court under both the law of the Virgin Islands and the Federal Arbitration Act. Unfortunately, however, there is no statutory scheme to regulate and implement the enforcement of arbitration agreements enacted in the Virgin Islands.[17] Although the Supreme Court has held that the more 'substantive' provisions of the FAA, which declare arbitration agreements to be valid and enforceable, do apply in state court and therefore also in the Territorial Court, the Court has never definitively ruled that the more 'procedural' provisions of the FAA concerning the regulation and enforcement of agreements to arbitrate also apply in a state or territorial court.

In the 1984 decision which finally explicitly held that the substantive federal law making agreements to arbitrate valid and enforceable also applies in state courts, the Supreme Court reserved decision on whether certain procedural provisions "of the Arbitration Act apply to proceedings in state courts." *Southland*, 465 U.S. at 16 n.10. Yet, just a year earlier, in agreeing that a United States district court had improperly stayed arbitration pending decision in state court, the Supreme Court had indicated that some of the procedural provisions do apply in state court proceedings. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983). The Court recognized that "state courts, as much as federal courts, are obliged to grant stays of litigation under § 3 of the Arbitration Act":

> Although § 3 refers ambiguously to a suit "in any of the courts of the United States," the state courts have almost unanimously recognized that the stay provision of § 3 applies to suits in state as well as federal courts, requiring them to issue the same speedy relief when a dispute is referable to arbitration. . . . This is necessary to carry out Congress's intent to mandate enforcement of all covered arbitration agreements; Congress can hardly have meant

---

[17] The Restatement also fails to provide a regulatory framework. *See* Restatement (Second) of Contracts § 345(f) cmt. e (1979) ("Because questions concerning the enforcement of arbitration awards depend largely on statute, they are not considered in detail in this Restatement.").

that an agreement to arbitrate can be enforced against a party who attempts to litigate an arbitrable dispute in federal court, but not against one who sues on the same dispute in state court.

*Id.* at 27 & n.34 (citations omitted). The Court found less clear whether a state court is obligated to issue an order to compel arbitration under section 4 because, "[s]ection 4, unlike § 3, speaks only of a petition to 'any United States district court.' Nonetheless, at least one state court has held that § 4 does require state courts to issue § 4 orders to arbitrate where the section's conditions are met." *Id.* at 27 n.35 (citation omitted).

Then again, in a later case, the Supreme Court recited that "we have never held that §§ 3 and 4, which by their terms appear to apply only to proceedings in federal court . . . are nonetheless applicable in state court." *Volt Info. Sciences, Inc. v. Board of Trustees,* 489 U.S. 468, 477 n.6, 103 L. Ed. 2d 488, 109 S. Ct. 1248 (1989).

Of particular relevance for our purposes is the reminder in the *Volt* dissent of the "settled principles of federal supremacy [that] the law of any place in the United States includes federal law." *Id.* at 488 (Brennan, J., dissenting).

■ Since the Virgin Islands has neither enacted laws nor developed a regulatory scheme governing agreements to arbitrate independent of the FAA, it is appropriate for the Territorial Court to look to the substantive and procedural body of federal arbitration law for guidance in enforcing arbitration agreements.[18] This will not only implement "the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms," *id.* at 477, it will also fulfill the intention of the parties to have their agreements judicially validated and enforced.

---

[18] For example, where the state had not developed rules for the specific enforcement of an agreement to submit a dispute to arbitration, its supreme court looked to the FAA "to the extent [it is] applicable and consistent with otherwise-provided procedures applicable in this state, as providing information on how the federal courts would apply the Act." *Allied-Bruce Terminix Cos. v. Dobson,* 684 So. 2d 102, 106 (Ala. 1995) (dealing specifically with 9 U.S.C. §§ 3 & 4, after remand from the United States Supreme Court, *Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 130 L. Ed. 2d 753, 115 S. Ct. 834 (1995)). The Alabama Court also applied section 16 concerning when parties may appeal during the arbitration process.

181

We therefore hold that the procedural, as well as the substantive, provisions of the Federal Arbitration Act are available to parties to seek recourse in the Territorial Court of the Virgin Islands to validate, enforce, modify, or vacate agreements to arbitrate.[19] Any other interpretation would allow local, territorial law, or rather the lack of it, to thwart and obstruct the implementation of federal law. The failure of the Virgin Islands government to provide a regulatory scheme for validating, enforcing, or modifying agreements to arbitrate in Territorial Court cannot undermine the validity and enforceability of arbitration agreements in violation of federal law.[20]

■ In executing the CBA, the Union, and the Government agreed that "[t]he Arbitrator's award rendered within the limitations of section 2 of this Agreement shall be final and binding on the aggrieved employee or employees, the Union, and the Employer and shall be enforceable in any court of competent jurisdiction." CBA, Art. X, § 8. This brought the parties within section 9 of the Federal Arbitration Act, which provides that

> if the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is

---

[19] Since the rules of procedure in the Territorial Court are based upon and largely follow the FEDERAL RULES OF CIVIL PROCEDURE, *see* TERR. CT. R. 7, the parties and the court will not have the problem of analogizing references in the FAA to federal procedure which-state courts may face, *see, e.g., Allied-Bruce*, 684 So. 2d at 106 n.2.

[20] Without discussing whether the FAA applies in the Territorial Court, the United States Court of Appeals for the Third Circuit held that "in the Virgin Islands, unless an independent basis for federal jurisdiction exists, a suit to confirm or vacate an arbitrator's award pursuant to the Federal Arbitration Act must be brought in the Territorial Court, not in the District Court of the Virgin Islands." *Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 912 (3d Cir. 1994) (Case improperly removed to district court because no federal jurisdiction). Although the applicability of the FAA to the Territorial Court was not entirely without doubt, the court assumed that the federal act applied in the lower court without noting contrary precedent. *See Sigal v. Three K's, Ltd.*, 456 F.2d 1242, 1243 (3d Cir. 1972) (FAA did not apply to the Municipal Court of the Virgin Islands, the forerunner of the Territorial Court); *Remole v. Sullivan*, 17 V.I. 193, 196-97 (Terr. Ct. 1981) (same); *see generally Government v. Robert deJongh*, 28 V.I. 153, 160 (D.C.V.I. App. Div. 1993). While Coastal General could be read as implying that at least section 10(a) of the FAA applies in the Territorial Court, the Court of Appeals did not expressly resolve whether all the provisions of the FAA apply in the Territorial Court.

made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9. Therefore, a party who receives a favorable arbitration award, such as the Union or Acker in this case, may seek its enforcement in the Territorial Court under section 9 of the FAA.

Section 10(a) lists the following factors for the Territorial Court to consider in determining whether the award may be vacated or otherwise modified:

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(5) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

*Id.* § 10(a).[21]

---

[21] In addition to sections 9, 10(a), and 11, other sections of the FAA clearly apply in Territorial Court. These include: section 3, providing for a stay of proceedings where issue therein referable to arbitration; section 4, for order to compel arbitration and judicial enforcement; section 5, appointment of arbitrators or umpire; section 6, application heard as motion; section 7, witnesses before arbitrators, their fees, and compelling attendance; section 12, notice of motions to vacate or modify and their service, and procedure for

■ Section 11 provides three additional grounds for the Territorial Court "to make an order modifying or correcting the award upon the application of any party to the arbitration . . . . The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties." *Id.* § 11. Therefore, a party who has grounds to challenge an arbitration award, such as the Government in this case, may seek an order from the Territorial Court vacating, modifying, or correcting the award pursuant to sections 10(a) and 11 of the FAA.

We accordingly vacate the Territorial Court's dismissal of the Government's petition for lack of jurisdiction and remand the matter for the Territorial Court to consider whether the pleadings before it, or as and if they might be amended, are sufficient for the parties to invoke the provisions of the Federal Arbitration Act in accordance with this opinion.

## IV. Conclusion

In conclusion, we agree with the Territorial Court that it lacked jurisdiction to review the Arbitrator's award under the Writ of Review statute, 5 V.I.C. §§ 1421-23. We hold, however, that the Territorial Court has jurisdiction to enforce an arbitration award and that the Federal Arbitration Act supplies the framework for the exercise of that jurisdiction. We therefore vacate the Territorial Court's dismissal of the Government's petition for lack of jurisdiction and remand the matter for the court to consider, in accordance with this opinion and within the framework of the FAA, whether the pleadings before it, or as and if they may be amended, are sufficient for the Government to seek relief, or for the Union or Acker to invoke Article X, Section 8 of the CBA and seek enforcement of the Arbitrator's award.

DATED this 1st day of December, 1997.

---

staying proceedings; section 13, what papers must be filed for an order confirming, modifying, or correcting award; and section 16, appeals from actions of Territorial Court. There are some provisions of the FAA which obviously would not apply in the Territorial Court because they deal with strictly federal proceedings, *e.g.*, 9 U.S.C. § 8 (proceedings begun by libel in admiralty and seizure of vessel or property); *id.* § 10(b) (referring to 5 U.S.C. §§ 372 & 380).

The provisions of the Federal Arbitration Act are attached in the Appendix to this opinion.

## Federal Arbitration Act, 9 U.S.C. §§ 1-16

§ 1. "Maritime transactions" and "commerce" defined; exceptions to operation of title

"Maritime transactions", as herein defined, means charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction; "commerce", as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

§ 2. Validity, irrevocability, and enforcement of agreements to arbitrate

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

§ 3. Stay of proceedings where issue therein referable to arbitration

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an

agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

§ 4. Failure to arbitrate under agreement; petition to United States court having jurisdiction for order to compel arbitration; notice and service thereof; hearing and determination

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the FEDERAL RULES OF CIVIL PROCEDURE. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the FEDERAL RULES OF CIVIL PROCEDURE, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that

an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

## § 5. Appointment of arbitrators or umpire

If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

## § 6. Application heard as motion

Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided.

## § 7. Witnesses before arbitrators; fees; compelling attendance

The arbitrators selected either as prescribed in this title or otherwise, or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case. The fees for such attendance shall be the same as the fees of witnesses before masters of the United States courts. Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed by the arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons so summoned to testify

shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

§ 8. Proceedings begun by libel in admiralty and seizure of vessel or property

If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award.

§ 9. Award of arbitrators; confirmation; jurisdiction; procedure

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresi-

dent, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court.

§ 10. Same; vacation; grounds; rehearing

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(5) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

(b) The United States district court for the district wherein an award was made that was issued pursuant to section 580 of title 5 may make an order vacating the award upon the application of a person, other than a party to the arbitration, who is adversely affected or aggrieved by the award, if the use of arbitration or the award is clearly inconsistent with the factors set forth in section 572 of title 5.

§ 11. Same; modification or correction; grounds; order

In either of the following cases the United States court in and for the district wherein the award was made may make an order

189

modifying or correcting the award upon the application of any party to the arbitration—

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

§ 12. Notice of motions to vacate or modify; service; stay of proceedings

Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court. For the purposes of the motion any judge who might make an order to stay the proceedings in an action brought in the same court may make an order, to be served with the notice of motion, staying the proceedings of the adverse party to enforce the award.

§ 13. Papers filed with order on motions; judgment; docketing; force and effect; enforcement

The party moving for an order confirming, modifying, or correcting an award shall, at the time such order is filed with the clerk for the entry of judgment thereon, also file the following papers with the clerk:

(a) The agreement; the selection or appointment, if any, of an additional arbitrator or umpire; and each written extension of the time, if any, within which to make the award.

(b) The award.

(c) Each notice, affidavit, or other paper used upon an application to confirm, modify, or correct the award, and a copy of each order of the court upon such an application.

The judgment shall be docketed as if it was rendered in an action.

The judgment so entered shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered.

§ 14. Contracts not affected

This title shall not apply to contracts made prior to January 1, 1926.

§ 15. Inapplicability of the Act of State doctrine

Enforcement of arbitral agreements, confirmation of arbitral awards, and execution upon judgments based on orders confirming such awards shall not be refused on the basis of the Act of State doctrine.

§ 16. Appeals

(a) An appeal may be taken from—

(1) an order—

(A) refusing a stay of any action under section 3 of this title,

(B) denying a petition under section 4 of this title to order arbitration to proceed,

(C) denying an application under section 206 of this title to compel arbitration,

(D) confirming or denying confirmation of an award or partial award, or

(E) modifying, correcting, or vacating an award;

(2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or

(3) a final decision with respect to an arbitration that is subject to this title.

(b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order—

(1) granting a stay of any action under section 3 of this title;

(2) directing arbitration to proceed under section 4 of this title;

(3) compelling arbitration under section 206 of this title; or

(4) refusing to enjoin an arbitration that is subject to this title.

### ORDER OF THE COURT

AND NOW, this 1st day of December, 1997, having considered the arguments and submissions of the parties; and for the reasons set forth in the Court's accompanying Opinion of even date, it is hereby

ORDERED THAT the Territorial Court's dismissal for lack of jurisdiction is vacated, and this matter is remanded to the Territorial Court for further proceedings consistent with this opinion.